IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BETH LOUISE G., | CV 24-115-M-KLD |
| Plaintiff, | |
| vs. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq.

## I.    Procedural Background

Plaintiff protectively filed an application for Title II disability benefits on January 19, 2023, alleging disability since April 1, 2016, based on physical and mental impairments. (Tr. 164-67).[1]  Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Tr. 22-42, 81-88,

---

[1] Citations to the certified administrative record filed by the Commissioner (Doc. 7) are designated as "Tr." and refer to the Bates-stamped page numbers assigned by the Social Security Administration rather than the page numbers assigned by the Court's electronic docketing system.

90-98, 112-115). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision dated April 3, 2024, the agency's final decision for purposes of judicial review. (Tr. 1-6). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.    <u>Legal Standards</u>

### A.    **Standard of Review**

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an

ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

## B.    Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) she suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A); *see also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act. At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three. At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, she must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.  <u>Discussion</u>

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of April 1, 2016, through her date last insured of June 30, 2022. (Tr. 24). At step two, the ALJ found that Plaintiff had the following severe impairments: status-post left shoulder injury with surgical intervention, status-post carpal tunnel syndrome release to the left hand, migraines, and post-traumatic stress disorder (PTSD). (Tr. 25). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of any impairment described in the Listing of

Impairments 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d),

404.1525 and 404.1526). (Tr. 26).

The ALJ then found that Plaintiff had the residual functional capacity (RFC)

to perform light work with several limitations including:

> [S]he can never climb ladders, ropes, and scaffolds. She can
> frequently climb ramps and stairs. She can frequently reach overhead,
> laterally, and forward with non-dominant left upper extremity. She
> can frequently finger and handle with the non-dominant left hand.
> She can frequently balance, as defined by the SCO, and frequently
> stoop, kneel, crouch and crawl. She can tolerate occasional exposure
> to vibration, extreme cold and extreme heat. She can tolerate no
> exposure to hazards, such as unprotected heights and moving
> mechanical parts. She can tolerate no more than moderate noise. She
> can tolerate bright light and sunlight with protective eyewear, a hat or
> visor. She can occasionally interact with the public. She can
> frequently interact with coworkers and supervisors She can tolerate
> frequent changes in a routine work setting.

(Tr. 28). At step four, the ALJ found that Plaintiff was capable of

performing past relevant work as a stock control clerk. (Tr. 40).

Alternatively, proceeding to step five, the ALJ found based on the

vocational expert's testimony that other jobs exist in significant numbers in

the national economy that Plaintiff could perform, including work as a

cleaner, mail clerk, and routing clerk. (Tr. 40-41).

Plaintiff argues the ALJ's decision is not supported by substantial evidence

and raises three issues on appeal. First, Plaintiff argues the ALJ did not provide

clear and convincing reasons for discounting her subjective symptom testimony as to the intensity, persistence, and limiting effects of her migraine headaches. Second, Plaintiff contends the ALJ failed to account for her use of, and need for, a service animal in determining her RFC. Third, Plaintiff contends the ALJ erred in assessing the persuasiveness of prior administrative findings by the state agency physicians and the opinion of her chiropractor.

### A.    Subjective Symptom Testimony

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

This standard requires the ALJ to "show [her] work" by providing a "rationale … clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)). In addition, the court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 492. This means the court "may not take a general finding" by the ALJ "and comb the administrative record to find specific" evidence in support of that finding. *Brown-Hunter*, 806 F.3d at 494.

If the ALJ provides at least one valid reason to discount the claimant's testimony, any error in the remaining reasons is harmless. *See e.g. Joshua P. Kijakazi*, 2021 WL 4330858, at *3 (D. Or. Sept. 23, 2021) (citing *Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's adverse credibility determination because the ALJ "provided at least one clear and convincing reasons supported by substantial evidence for rejecting [it] as not credible") and *Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) (If the ALJ provides "at least one valid reason to discount [a claimant's symptom] testimony, error in the remaining reasons is harmless"). "There is, however, one important caveat to this rule: A lack of supporting medical evidence cannot be the only valid reason provided for discounting a claimant's testimony." *Joshua P.*, 2021 WL 4330858, at *3 (citing

*Valdez v. Berryhill*, 746 F.App'x 676, 677 (9th Cir. 2018) (stating that an "ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason").

Here, the ALJ found that Plaintiff met her initial burden under the two-step process because she produced evidence of medically determinable impairments— including migraine headaches—that could reasonably be expected to cause the alleged symptoms. Accordingly, and because there is no evidence of malingering, the ALJ was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom testimony. Plaintiff argues the ALJ failed to meet this burden, and did not offer any clear and convincing reasons for rejecting her testimony as to the intensity, persistence, and limiting effects of her migraines.

At her administrative hearing on March 13, 2024, Plaintiff testified that she suffers from anxiety attacks, which trigger migraine headaches. (Tr. 61). Plaintiff testified that her migraines start with dizziness and lightheadedness, then she sees an aura and blinking lights, her hands and feet start tingling, and her face and tongue go numb so she cannot talk. (Tr. 61). Plaintiff explained that by that time she is usually vomiting and stated that majority of her migraines end with her passing out. (Tr. 61-62). Plaintiff testified that she experienced all of these symptoms during her most recent severe migraine, which occurred on January 29,

2024, and lasted through the night. (Tr. 62). Plaintiff explained that when she woke, she had a headache that was no longer considered a migraine. (Tr. 62). Plaintiff stated that she slept for the next three days, getting up only to do what she needed to, and on the fourth day was able to function without a headache. (Tr. 62). Plaintiff testified that if a migraine is triggered by an extreme anxiety attack, her recovery period is longer. (Tr. 62). Plaintiff testified that before starting Botox in December 2023, she was having between 12 and 15 migraines a month. (Tr. 63). After starting Botox, Plaintiff said, the frequency of her migraines had decreased to about nine per month. (Tr. 63). Plaintiff testified that the severity of her migraines depends on context and intensity of her anxiety. (Tr. 63). As Plaintiff described it, her milder migraines cause tingling in her hands and feet, an aura in front of her eyes, and sensitivity to noise and light that she copes with by napping for three to four hours. (Tr. 63). Plaintiff testified that she typically has to sleep for one to two days after a mild migraine, getting up only periodically to do things. (Tr. 63-64). Plaintiff identified several things that cause her anxiety and trigger migraines, including being in crowds and grocery stores or any big event. (Tr. 64). She said that she typically limits these outings to once a week and if her husband is not available to accompany her, she will isolate instead and rely on internet shopping. (Tr. 64). Plaintiff testified that her PTSD makes her hypervigilant, heightens her depression, and interferes with her ability to function—including a three-to-four-

month period about a year earlier during which she did not do anything and her muscles were starting to atrophy with lack of exercise and movement. (Tr. 65). Plaintiff explained that this had improved with therapy, but she still has depression and anxiety. (Tr. 65).

In September 2023, Plaintiff completed seizure and headache questionnaires. (Tr. 251-256). She estimated that she has seizures about once a year and wrote that her last seizure was in January 2023. (Tr. 254). She indicated that after experiencing a seizure she sleeps for seven to ten days to recover, waking only to eat when necessary and use the toilet, and cannot resume normal activities for about two weeks. (Tr. 254). Plaintiff reported that she first started having headaches in May 2011 after a rollover accident while she was in the military. (Tr. 251). She described her headache symptoms as including nausea, vomiting, dizziness, slurred speech, paralysis of the left side and tongue, fainting/unconsciousness, and shivers of the entire body like a shock. (Tr. 251). Plaintiff indicated that her most recent headache happened just two days before the date of her questionnaire and estimated that she gets headaches between 12 and 25 times every month, lasting one to two hours and requiring five to seven recovery days. (Tr. 251-52). She wrote that when she has a headache, no movement is possible, she will remain in a cold dark room with an ice pack on her head and will typically sleep for more than 12 hours. (Tr. 252).

11

Plaintiff also completed a function report in September 2023. (Tr. 258-265). She stated that she requires at least five days off to recover from a migraine/seizure and has chronic pain that does not allow for long periods of time to sit, stand, bend, or lift. (Tr. 258). Plaintiff reported that on a typical day she stretches, takes medicine, eats, showers if she can, walks the dog, goes to appointments, and naps. (Tr. 259). She wrote that she spends multiple days in sleepwear, does not go out alone due to the possibility of seizures, and uses a service dog for seizure/migraine alerts. (Tr. 259, 261, 264).

The ALJ provided a detailed summary of Plaintiff's subjective symptom testimony (Tr. 29-31) but discredited her statements as to the severity and limiting effects of her migraine headaches for two reasons. First, the ALJ cited evidence that Plaintiff's migraines improved with treatment, including chiropractic adjustments and medication. (Tr. 32-33). An ALJ may discount a claimant's testimony based on evidence that her symptoms improved with treatment or were well controlled with medication. *See e.g. Burkett v. Saul*, 806 F. App'x. 509, 512 (9th Cir. 2020); *Torres v. Saul*, 798 F. App'x 979, 981 (9th Cir. 2019) ("The [ALJ] proffered specific, clear, and convincing reasons for discounting [claimant's] pain and limitations testimony because the record showed that [her] conditions improved with treatment and were less severe than alleged."); *Darling v. Kijakazi*, 2023 WL 4103935, at *2 (9th Cir. June 21, 2023) (concluding the ALJ

provided clear and convincing reasons for discounting the claimant's subjective symptom testimony, including "treatment efficacy[] and longitudinal improvement"); *Jesse B. v. Commissioner*, 2025 WL 1892612, at *3-5 (D. Or. July 9, 2025).

The ALJ cited chiropractic treatment records from August 2020 to July 2021 reflecting that during this period Plaintiff "reported an improvement in migraines and neck pain with almost each session." (Tr. 32, citing Tr. 318-379). These records indeed reflect that Plaintiff described her migraines as "better since the last visit" 35 times,[2] the "same since the last visit" 12 times,[3] and "worse since the last visit" only once.[4]  The ALJ pointed to additional medical records showing an overall improvement in Plaintiff's migraines with continued treatment. For instance, the ALJ referred to a neurology appointment in February 2022, during which Plaintiff described her migraines as under better control, improved with the addition of levetiracetam, and reduced in frequency from four times a week to only once a week. (Tr. 32, 560-561). The ALJ noted that at a therapeutic massage appointment in January 2023 Plaintiff reported having had only one migraine in

---

[2]  (Tr. 320, 320, 321, 322, 323, 325, 326, 327, 328, 329, 331, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 352, 355, 356, 357, 358, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369).

[3] (Tr. 318, 319, 323, 324, 330, 332, 333, 334, 351, 353, 354, 370).

[4] (Tr. 359).

the past month and it did not require prescription medication. (Tr. 33, citing Tr. 1213). Although Plaintiff told her primary care provider at an August 2023 appointment that she had "7+ migraines a month" (Tr. 33, citing Tr. 1206), at a mental health appointment in September 2023 she said that her migraines were occurring with less frequency (Tr. 33, citing Tr. 1267). The ALJ also noted that Plaintiff was prescribed duloxetine and Botox for migraines at a neurology visit in the fall of 2023. (Tr. 33, citing Tr. 1374-77; Tr. 1370). By December 2023, Plaintiff reported that her Botox injections had a profound impact on her mental health and stress, knowing that her migraines were going to be less severe and at times, non-existent. (Tr. 33, citing Tr. 1256).

Plaintiff argues the ALJ overlooked evidence corroborating her testimony about the severity of her migraines, such as the fact that she presented to emergency room in April 2023 with a severe migraine (Tr. 1338-1344), and stated at a neurology appointment in June 2023 she was having 25 to 30 days of headaches and at least eight migraines a month, lasting from one day to a full week (Tr. 1379). Although the ALJ did not specifically address these particular treatment notes, an ALJ is not required to discuss every piece of medical evidence and treatment note in the record. *See e.g. Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395-95 (9th Cir. 1984) (An ALJ need not discuss every treatment note

in a claimant's medical record but must "explain why significant probative evidence has been rejected").

The ALJ thoroughly summarized Plaintiff's migraine-related testimony and medical records, including evidence of emergency room visits and her statements to providers about the frequency, severity, and duration of her migraines. (Tr. 29-33). While the record certainly establishes that Plaintiff has continued to experience migraine headaches with varying degrees of severity and frequency, the ALJ cited substantial evidence reflecting a pattern of overall improvement with medication management and other treatment. The ALJ reasonably found that the evidence described above was not entirely consistent with Plaintiff's testimony, such as testimony that before starting Botox she was having between 12 and 15 migraines month and after starting Botox was still having about nine migraines a month. *See Naanos v. Barnhart*, 141 Fed. Appx. 592 (9th Cir. 2005) (concluding "the ALJ properly rejected [the claimant's] pain testimony regarding his migraines, finding that migraines responded to treatment); *Valarie Jean T. v. Commissioner of Soc. Sec. Admin.*, 2025 WL 894654, at *6 (D. Idaho Mar. 24, 2025) (finding that the ALJ identified clear and convincing reasons for discounting claimant's subjective symptom testimony regarding the disabling effects of her migraines where the ALJ cited evidence reflecting that claimant's migraines appeared to be well controlled with medication and claimant's

statements to her providers that her migraine pain was improved). The Court therefore finds that the ALJ permissibly discounted Plaintiff's testimony as to the severity and frequency of her migraine headaches based in part on substantial evidence reflecting an overall improvement in her migraines with treatment.

The ALJ also discounted Plaintiff's symptom testimony on the ground that her activities of daily living suggested "greater functionality and lesser limitation th[a]n alleged." (Tr. 33). An ALJ may discount a claimant's testimony based on daily activities that either contradict her testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). *See also*, *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

Here, the ALJ found that some of Plaintiff's reported activities were not entirely consistent with her testimony as to the severity of her migraine-related symptoms and limitations. (Tr. 33, 39). For example, the ALJ noted that in September 2018, Plaintiff reported to providers that she had been helping care for her two-year-old nephew and would be vacationing in Canada for two weeks to help her cousin with horses and cattle drives on a ranch. (Tr. 34, citing Tr. 862). In May 2019 Plaintiff reported that she had taken a "relaxing" trip to Austin and Shreveport with her husband, and records from the summer of 2019 reflect that

Plaintiff had been working out a gym, helping a friend with childcare, and was assisting an equine therapist with fundraising and marketing events. (Tr. 34, citing Tr. 777, 781). By November 2019, Plaintiff reported that she was working three days a week at an equine therapy stable and was caring for horses and chickens on her mother's farm. (Tr. 34, citing Tr. 760). Although Plaintiff reported that a migraine prevented her from working at the therapy stable for two days in December 2019, in January 2020 she reported that once the therapy stable reopened after the holidays she went every day. (Tr. 34-35, citing 745-746, 754). In February 2020, Plaintiff reported that she continued to work three days a week at that therapy stable. (Tr. 35, citing Tr. 739). In August 2023, Plaintiff reported that she and her husband traveled to Colorado for a weekend to see a concert, and in September 2023 she reported working with her husband on comedic stages in Kalispell for the previous few months, enjoying bits of stand-up comedy. (Tr. 37, citing 1261-1264, 1267, 1269). The ALJ reasonably found that Plaintiff's reported activities during this period undercut her testimony that she experiences migraine-triggering anxiety attacks when she is in crowds, in a grocery store, or at a theater, and that her migraines and associated recovery periods regularly incapacitate her for days at a time several times a month. (Tr. 39).

Even if the record could support a different result, the Court must affirm the ALJ's findings if they are supported by substantial evidence. *See Burch v.*

*Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) ("[W]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."). Overall, the Court finds that the ALJ provided at least one specific, clear and convincing reason for discounting Plaintiff's symptom testimony. *See Joshua P. v. Kijakazi*, 2021 WL 4330858, at *3 (D. Or. Sept. 23, 2021) ("To avoid committing harmful error, an ALJ must provide only one clear and convincing reason, supported by substantial evidence, for discounting a claimant's symptom testimony.")

### B.    Service Animal

Plaintiff next argues the ALJ erred by failing to consider and incorporate her need for a service dog in the RFC assessment. Plaintiff testified that she has had a licensed service dog since approximately 2015 who alerts her by barking when she is on the verge of having an anxiety attack that will trigger a migraine and seizure. (Tr. 60, 61). Plaintiff testified that she had difficulty at her last job and finding subsequent employment because of her need for a service dog. (Tr. 60, 61). Plaintiff has reported at various times to her medical providers that she relies on a service dog (Tr. 590, 1079, 1118), and her dog has often accompanied her to therapy sessions. (Tr. 764, 768, 773, 777, 779, 781, 786, 788, 790, 792, 801, 803, 806, 808, 818-19, 838). In August 2023, Plaintiff reported that she was beginning to train a new licensed service dog. (Tr. 590, 1249, 1263). At Plaintiff's

administrative hearing, the vocational expert testified that in her experience, a service animal would be considered a reasonable accommodation by the employer. (Tr. 77). The ALJ acknowledged Plaintiff's testimony about her service dog in the written decision (Tr. 29) but did not consider her use of a service dog in the RFC assessment. Plaintiff contends this was error.

The Commissioner counters that the ALJ was not required to consider Plaintiff's alleged need for a service dog because the Social Security Administration "does not take the possibility of 'reasonable accommodation' into account" when determining whether an individual is disabled. (Doc. 11 at 7, citing *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 796, 803 (1999) and SSR 11-2p, 2011 WL 4055665, at *9 ("When we determine whether a person can do other work that exists in significant numbers in the national economy, we do not consider whether he or she could do so with reasonable accommodations, even if an employer would be required to provide reasonable accommodations under the Americans with Disabilities Act of 1990."). Because the vocational expert testified that a service animal would be considered a reasonable accommodation by the employer, the Commissioner contends the ALJ correctly excluded Plaintiff's alleged need for service dog from consideration in the RFC assessment.

As Plaintiff points out, however, a number of district courts in the Ninth Circuit and elsewhere have held that an ALJ must consider a claimant's use of a

service animal in the RFC assessment if there is evidence that the service animal is "medically necessary." *See e.g.*, *W.D. v. Dudek*, 2025 WL 947533, at *6 (D. Colo. March 28, 2025) (recognizing that "[i]n the cases that have addressed the issue, courts have remanded when an ALJ fails to discuss a claimant's need for [a service animal] and there is evidence that [a service animal] is 'medically necessary'" and listing several cases); *Elliot G. v. Kijakazi*, 2022 WL 910055, at *6 (D. Or. March 29, 2022) (finding the ALJ erred by failing to address the claimant's alleged need for a service animal as described by one of the claimant's doctors); *Kourtney L. v. Berryhill*, 2019 WL 3945251, at *2 (D. Or. Aug. 21, 2019) (finding the ALJ failed to provide legally sufficient reasons for rejecting medical opinion evidence that the claimant required a service animal and therefore erred by omitting "any service animal requirement from the RFC"); *Payano v. Colvin*, 2017 WL 4778593, at *4 (D. Nev. Oct. 23, 2017) (finding the ALJ's failure to include the use of a service dog in the hypothetical to the vocational expert was harmless error where the evidence did not show the dog was "necessary" for the claimant to work); *Santos v. Colvin*, 2013 WL 5176846, at *2, 6 (W.D. Wash. Sept. 12, 2013) (finding the ALJ erred by failing to take into account the claimant's use of a service dog where there was at least some evidence in the record that the claimant's use of a service dog was "medically necessary," including a doctor's letter).

Here, Plaintiff relies on her own testimony and treatment notes demonstrating that her service dog often accompanied her to therapy appointments but has not provided medical documentation as required to establish medical necessity. *See W.D.*, 2025 WL 947533, at *6-7 (recognizing that evidence of a prescription from a medical provider may be sufficient to establish medical necessity, but treatment notes demonstrating "that having a dog provides some support or benefit" to the claimant do not establish medical necessity); *Cordell v. Saul,* 2019 WL 6257994, at *18 (N.D. W.Va. Nov. 4, 2019) ("When there is evidence of a prescription of the dog from a medical provider, the service animal must be considered in the individual's RFC."). Although Plaintiff indicated on her function report that a doctor had prescribed the use of a service dog (Tr. 264), she does not point to any medical records or opinions establishing that a doctor in fact recommended or prescribed the use of a service dog. Absent evidence that Plaintiff's service dog was medically necessary, the ALJ was not required to consider her alleged need for a service dog when evaluating her RFC and permissibly relied on the vocational expert's testimony that a service animal would be considered an accommodation.

## C.    Medical Opinion Evidence

Finally, Plaintiff challenges the ALJ's evaluation of the medical opinion evidence. Under the amended regulations that apply to Plaintiff's claim, the ALJ

must consider all medical opinions and prior administrative medical findings, and evaluate their persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a). Those factors include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920(c). The two most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920(a).

In assessing Plaintiff's RFC, the ALJ relied on prior administrative findings by state agency physicians G. Pincomb, M.D. and W. Fernandez, M.D., both of whom found that Plaintiff could perform light work with additional postural and environmental limitations. (Tr. 85-86, 94-97). The ALJ determined that the findings of Dr. Pincomb and Dr. Fernandez were supported by a "thorough review of the record" and a "a reasonable detailed explanation. (Tr. 38). The ALJ also relied on the opinion of Plaintiff's longtime chiropractor, Matthew Lake, D.C., who found that Plaintiff could perform a range of light work on a full-time basis. (Tr. 1165-66). The ALJ similarly found that Dr. Lake's opinion was supported by his own treatment notes and a reasonable explanation. (Tr. 39).

Plaintiff argues that because the ALJ failed to provide clear and convincing reasons for discounting her migraine-related symptom testimony, "the ALJ's finding that the findings of Dr. Pincomb, Dr. Fernandez, and Dr. Lake are

supported by and consistent with record is not supported by substantial evidence." (Doc. 9 at 12). As discussed above, however, the ALJ provided at least one clear and convincing reason for rejecting Plaintiff's testimony as to the severity and limiting effects of her migraines. The ALJ reasonably evaluated the persuasiveness of the medical evidence and relied on the findings of the state agency physicians and chiropractor when assessing Plaintiff's RFC.

**IV.** **Conclusion**

For the reasons discussed above, the Court finds the ALJ's decision is supported by substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is AFFIRMED.

DATED this 24th day of September, 2025.

Kathleen L. DeSoto
United States Magistrate Judge